IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mary Ann Sparr and Daniel Cuello, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 18 CV 1811 |
| ) | |
| v. ) | |
| ) | Judge Manish S. Shah |
| Chicago Police Officers Baneond ) | |
| Chinchilla, Star No. 9445, Federico ) | |
| Andaverde, Star No. 2530, Gerardo Perez, ) | |
| Star No. 19697, Peter Fleming, Star No. ) | SECOND AMENDED COMPLAINT |
| 6063, Lemornet Miller, Star No. 10424, ) | |
| Lisett Estrella, Star No. 10642, James ) | |
| Echols, Star No. 12329, Herbert ) | |
| Betancourt, Star No. 16976, Gerardo ) | |
| Calderon, Star No. 17623, Masud Haidari, ) | |
| Star No. 4663, Kyle Mingari, Star No. ) | |
| 4733, and Marcus Broadway, Star No. ) | |
| 13003, Michelle Murphy, Star No. 4176, ) | |
| and the City of Chicago, ) | |
| ) | |
| Defendants. ) | |

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331, and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiff Mary Ann Sparr ("Sparr") was and is a citizen of the United States, and was within the jurisdiction of this court.

4. At all times herein mentioned, Plaintiff Daniel Cuellar ("Cuellar") was and is a citizen of the United States, and was within the jurisdiction of this court.

5. At all times herein mentioned, Defendant City of Chicago Police Officer Baneond Chinchilla, Star No. 9445, ("Chinchilla") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

6. At all times herein mentioned, Defendant City of Chicago Police Officer Federico Andaverde, Star No. 2530, ("Andaverde") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

7. At all times herein mentioned, Defendant City of Chicago Police Officer Gerardo Perez, Star No. 19697, ("Perez") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

8. At all times herein mentioned, Defendant City of Chicago Police Officer Peter Fleming, Star No. 6063, ("Fleming") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

9. At all times herein mentioned, Defendant City of Chicago Police Officer Lemornet Miller, Star No. 10424, ("Miller") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

10. At all times herein mentioned, Defendant City of Chicago Police Officer Lisett Estrella, Star No. 10642, ("Estrella") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

11. At all times herein mentioned, Defendant City of Chicago Police Officer James Echols, Star No. 12329, ("Echols") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

12. At all times herein mentioned, Defendant City of Chicago Police Officer Herbert Betancourt, Star No. 16976, ("Betancourt") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

13. At all times herein mentioned, Defendant City of Chicago Police Officer Gerardo Calderon, Star No. 17623, ("Calderon") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

14. At all times herein mentioned, Defendant City of Chicago Police Officer Masud Haidari, Star No. 4663, ("Haidari") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

15. At all times herein mentioned, Defendant City of Chicago Police Officer Kyle Mingari, Star No. 4733, ("Mingari") was employed by the City of Chicago Police Department and

was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

16. At all times herein mentioned, Defendant City of Chicago Police Officer Marcus Broadway, Star No. 13003, ("Broadway") was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. This Defendant is being sued in his individual capacity.

17. At all times herein mentioned, Defendant Chicago Police Officer Michelle Murphy, Star No. 4176 ("Murphy") was employed by the Chicago Police Department as a Chicago Police Officer and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in her individual capacity.

18. At all times herein mentioned, the City of Chicago was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the Chicago Police Department. At all relevant times the City of Chicago was the employer of Murphy.

## FACTUAL ALLEGATIONS

19. On or about February 3, 218, Plaintiffs were lawfully located in their home located on South Trumbull Street in Chicago, Illinois.

20. On that day and place Defendants Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari and/or Broadway entered and searched Plaintiffs' home. During the execution of the search warrant one or more Plaintiffs were seized.

21. Plaintiffs are informed and believe that Chinchilla had obtained a search warrant authorizing a search of Plaintiffs' home.

22. Defendant Chinchilla has at least forty-seven (47) misconduct complaints filed against him. At least fifteen (15) of those misconduct complaints included allegations that Chinchilla engaged in an illegal search.

23. Defendant Chinchilla has been named a defendant in at least six (6) lawsuits alleging the violation of citizens' civil rights. At least four (4) of those lawsuits alleged Chinchilla conducted illegal searches.

24. After entering Plaintiffs' home Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and/or Broadway unreasonable threatened to shoot one or more Plaintiffs.

25. Plaintiffs never consented to the entry or search of their residence.

26. There was no legal cause to enter and/or search Plaintiffs' residence other than the search warrant.

27. Plaintiffs are informed and believe that the alleged purpose of the search warrant was to obtain evidence of cocaine possession and/or cocaine sales.

28. During a lengthy search of Plaintiffs residence Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway did not recover any evidence of cocaine or cocaine sales.

29. After the search of Plaintiffs' residence was completed Plaintiffs were released without being charged with any crime.

30. During the course of executing the search warrant Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway unreasonable and unnecessarily caused significant property damage to Plaintiffs' home.

31. By reason of the above-described acts and omissions of Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway, Plaintiffs sustained injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering all to their damage in an amount to be ascertained.

32. The aforementioned acts of Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiffs' rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

33. By reason of the above-described acts and omissions of Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway, Plaintiffs were required to retain an attorney to institute, prosecute and render legal assistance to them in the within action so that they might vindicate the loss and impairment of their rights. By reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I
**Plaintiffs against Defendants Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway for Unreasonable Search and Seizure**

34. Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-three (33) as though fully set forth at this place.

35. By reason of the Defendants' conduct, Plaintiffs were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments of the Constitution of the United States and laws enacted thereunder.

36. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiffs' home was in violation of Plaintiffs' Constitutional Rights and not authorized by law. The Defendants violated the Plaintiffs' rights in the following manner: (1) Causing excessive and unnecessary property damage to Plaintiffs' home; and (2) The removal of property including U.S. Currency; and (3) the seizure of Plaintiff(s) person(s). These acts were in violation of the Plaintiffs' Fourth Amendment rights. Therefore, the Defendants, and each of them, in their individual capacity are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

## COUNT II
### Plaintiffs Against Chinchilla for
### Unreasonable Procurement of a Search Warrant

37. Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-three (33) as though fully set forth at this place.

38. Plaintiffs are informed and believe that Defendant Chinchilla procured a search warrant identifying Plaintiffs' home as the premises to be searched.

39. Procurement of the search warrant was unreasonable and unconstitutional for one or more of the following reasons:

   a. relied upon a confidential informant who had not previously provided reliable information in order to obtain the warrant;

   b. failed to independently verify necessary information provided by the confidential informant prior to obtaining the warrant;

   c. failing to advise the Assistant State's Attorney approving the warrant application and the judge issuing the warrant of all available relevant information related to Plaintiffs' home and Plaintiffs;

7

      d. failing to be truthful with the Assistant State's Attorney approving the warrant application and the judge issuing the warrant regarding all information provided by any alleged confidential information or J. Doe informant, and corroboration of that information and lack thereof.

40. No reasonably well-trained police officer in the position of Chinchilla would have applied for the search warrant obtained by Chinchilla, and it was done intentionally or with reckless disregard for the rights of Plaintiffs.

41. As a result of Chinchilla's unreasonable procurement of the search warrant Plaintiffs sustained damages including but not limited to property damage, property loss, and emotional distress.

42. The procurement of the search warrant was in violation of Plaintiffs' Constitutional Rights and not authorized by law. The foregoing was unnecessary, unreasonable and excessive, and in violation of Plaintiffs' Fourth Amendment rights under the U.S. Constitution. Therefore, Chinchilla, in his individual capacity is liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

## COUNT III
### Plaintiffs Against Andaverde For
### SUPERVISOR LIABILITY

43. Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-three (33) as though fully set forth at this place.

44. Andaverde was at all relevant times a Sergeant supervising the activities of Defendants Chinchilla, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway.

45. Andaverde knew that Defendants Chinchilla, Andaverde, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and/or Broadway had a practice of conducting illegal searches.

46. Andaverde approved, assisted, condoned and/or purposely ignored this practice that violated the Fourth and/or Fourteenth Amendments of the Constitution of the United States rights of citizens.

47. As a result of Andaverde's acts and omissions the Plaintiffs' constitutional rights were violated when Defendant Chinchilla improperly procured a search warrant, and in the manner that Chinchilla, Perez, Fleming, Miller, Estrella, Echols, Betancourt, Calderon, Haidari, Mingari, and Broadway unreasonably executed the search warrant on Plaintiffs' home.

48. The acts and omissions were in violation of Plaintiffs' Fourth and/or Fourteenth Amendment rights. Therefore, Andaverde, in his individual capacity, is liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

## COUNT VI
### Plaintiffs Against The City of Chicago For
### MONELL LIABILITY

49. Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-three (33) as though fully set forth at this place.

50. The misconduct of the Chicago Police Department Sergeants and Police Officers described above was undertaken pursuant to the practice of the Chicago Police Department in that as a matter of Practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise control and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

51. As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Review Authority, COPA, nor Internal Affairs will reasonable investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

52. The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

53. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015 Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence.

54. On December 8, 2015 Mayor Emanuel was asked the following questions and gave the following answer during a television interview on WTTW in Chicago, Illinois:

> Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?

> Answer: The short answer is, yes.

55. Several of the individual defendants in this case have had dozens of citizens' complaints filed against then without the City of Chicago implementing any discipline against them.

56. For example, Defendant Chinchilla has had at least forty-seven (47) misconduct complaints filed against him without receiving any discipline. At least fifteen (15) of those misconduct complaints included allegations that Chinchilla engaged in an illegal search.

57. Defendant Chinchilla was never disciplined by the Chicago Police Department as a result of any citizen complaint.

58. Similarly, Defendant Andaverde has had at least thirty-four (34) misconduct complaints filed against him. At least twelve (12) of those misconduct complaints included allegations that Andaverde engaged in an illegal search.

59. Defendant Andaverde was never disciplined by the City of Chicago as a result of any citizen complaint.

60. Defendant Miller has at least sixteen (16) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

61. Defendant Perez has had at least sixty-eight (68) complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

62. Defendant Fleming has had at least twenty- six (26) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

63. Defendant Mingari has had at least twenty-three (23) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

64. Defendant Echols has had at least twenty-five (25) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

65. Defendant Betancourt has had at least twenty-two (22) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

66. Defendant Haidari has had at least twenty-six (26) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint.

67. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

68. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

69. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, IPRA and/or COPA will not consider those allegations if they are deemed unsustained.

70. Even in instanced when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgments that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers.

71. For example, Defendant Chinchilla has been named a defendant in at least six (6) lawsuits alleging the violation of citizens' civil rights. At least four (4) of those lawsuits alleged Chinchilla conducted illegal searches.

72. Similarly, Defendant Andaverde has been named a defendant in at least four (4) lawsuits alleging Andaverde conducted illegal searches.

12

73. As a result of the lawsuits filed against Chinchilla and Andaverde the City of Chicago has paid more than $100,000 in settlements and judgments.

74. None of the settlements or judgments that resulted from lawsuits against Chinchilla and Andaverde caused the City of Chicago to investigate or reinvestigate the allegations against Chinchilla or Andaverde, and thus they were never punished.

75. In January 2017, The U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings:

   a. The City of Chicago's accountability systems for Chicago Police Officers contribute a pattern or practice of unconstitutional conduct;

   b. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

   c. Investigations into police misconduct are neither fair nor complete;

   d. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct; and

   e. The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct.

76. Plaintiffs allege that these customs, policies and practices, described above, were the moving force behind the violations of the Plaintiffs' rights. Based upon the principles set forth in <u>Monell v. New York City Department of Social Services</u>, the City of Chicago is liable for all the harm done to Plaintiffs as set forth above.

**COUNT V**
**Plaintiffs Against Michelle Murphy and Unknown Defendants for**
**Conspiracy to Deprive Plaintiffs' Civil Rights**
**(42 U.S.C. §1983)**

77. Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-three (33) as though fully set forth at this place.

78. By reason of the misconduct by Murphy and currently unknown defendants, Plaintiffs were deprived of rights secured to them by the Fourth and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

79. Between January 2015 and January 2018 Defendant Murphy made multiple telephone calls to 911.

80. Between January 2015 and January 2018 Defendant Murphy made multiple telephone calls to 911 falsely alleging that criminal activity was occurring at Plaintiffs' home located at 11214 S Trumbull, Chicago, Illinois.

81. Between January 2015 and January 2018 Defendant Murphy made multiple telephone calls to 911 falsely alleging that illegal narcotics activity was occurring at Plaintiffs' home located at 11214 S. Trumbull, Chicago, Illinois.

82. When Murphy made the telephone calls to 911 alleging that criminal activity was occurring at Plaintiffs' home she knew her allegations were false.

83. When members of the Chicago Police Department responded to Murphy's 911 calls they did not discover any evidence of the illegal activity falsely reported by Murphy.

84. In Illinois it is a crime to knowingly call 911 to falsely report a crime.

85. Despite the fact that Murphy repeatedly made calls to 911 falsely reporting criminal activity at Plaintiffs' home she has never been investigated or punished for this conduct.

86. Defendant Murphy has a history of falsely reporting crimes. In June 2015, Defendant Murphy admitted that she falsely accused three teenagers of a crime that resulted in

14

other members of the Chicago Police Department seizing them based upon Defendant Murphy's false allegations.

87. Defendant Murphy has been the subject of at least twenty-nine (29) misconduct complaints.

88. In or about February 2018, Murphy agreed to work in concert with one or more currently unknown defendants to cause a false report by made to her fellow Chicago Police Officers accusing Plaintiffs of engaging in illegal activity inside their home. The purpose of this agreement was to cause Plaintiffs to be subjected to a search and/or seizure by her fellow Chicago Police Officers without actual probable cause.

89. In furtherance of this conspiracy in January and/or February 2018, Murphy falsely reported that illegal narcotics activities were occurring inside Plaintiffs' home.

90. The actions and false reports of Murphy led to the issuance of a search warrant for Plaintiffs' home and an execution of that search warrant that caused Plaintiffs to be seized by Chicago Police Officers in violation of their civil rights.

91. Causing Plaintiffs to be searched and seized by police officers without legal cause was in violation of Plaintiffs' Fourth Amendment rights. Accordingly, Murphy and unknown defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

**COUNT VI**
**Plaintiffs Against Murphy and the City of Chicago for**
**FALSE IMPRISONMENT**

92. Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-three (33) as though fully set forth at this place.

93. Murphy procured Plaintiffs' seizure by other members of the Chicago Police Department when she falsely reported that Plaintiff had engaged in criminal activity for the purpose of requesting that Plaintiffs be seized.

94. The Chicago Police Officers that seized Plaintiffs did so based solely on the false information communicated by Murphy.

95. The Chicago Police Officers that seized Plaintiffs did not observe Plaintiffs engage in any criminal activity.

96. The Chicago Police Officers that seized Plaintiffs did not have any source of information other than Murphy indicating Plaintiffs allegedly engaged in criminal activity.

97. As a result of this false imprisonment Plaintiffs were injured emotionally and otherwise.

98. The City of Chicago is liable to Plaintiffs for the acts of Murphy pursuant to the doctrine of *respondeat superior.*

99. Therefore, Murphy and the City of Chicago are liable under the supplemental state law claim of False Imprisonment.

## COUNT VII
### INDEMNIFICATION PURSUANT TO 745 ILCS 10/9-102
### AGAINST DEFENDANT CITY OF CHICAGO

100. Plaintiffs hereby incorporate and reallege paragraphs one (1) through ninety-nine (99) as though fully set forth at this place.

101. The acts of the Defendants were committed in the scope of their employment with the Defendant City of Chicago.

      102.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-402, Defendant City of Chicago is liable for any judgments for compensatory damages in this case arising from the actions of the Defendant Police Officers.

WHEREFORE, the Plaintiffs, by and through their attorneys, ED FOX & ASSOCIATES, LTD., request judgment as follows against the Defendants, and each of them:

1. That the Defendants be required to pay Plaintiffs' general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiffs' special damages;

3. That Defendants be required to pay Plaintiffs' attorneys' fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That the Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiffs' costs of the suit herein incurred; and

6. That Plaintiffs have such other and further relief as this Court may deem just and proper.

                                                      BY:    s/ Garrett Browne

ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiffs
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
gbrowne@efox-law.com

**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY**

BY: <u>s/ Garrett Browne</u>

ED FOX & ASSOCIATES, LTD.
Attorneys for Plaintiffs
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
<u>gbrowne@efox-law.com</u>